Filed 9/28/22 P. v. Rodriguez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL ANGEL CEJA RODRIGUEZ,<br><br>    Defendant and Appellant. | H048117<br>(Santa Clara County<br>Super. Ct. No. C1652286) |

A jury convicted defendant Miguel Angel Ceja Rodriguez of second degree murder and assault with a firearm after he shot and killed a man at a park and wounded a bystander. He contends the trial court improperly excluded evidence of the murder victim's prior convictions, and should have instructed the jury that a person can act more quickly in self-defense based on knowledge the aggressor previously threatened others. He also contends the trial court abused its discretion by declining to strike a firearm sentencing enhancement, and he points out the abstract of judgment does not reflect that the court struck the punishment for another sentencing enhancement. Finding no error aside from the clerical mistake defendant notes, we will order the abstract amended to accurately reflect the sentence imposed and affirm the judgment.

## I. BACKGROUND

Armed with a semi-automatic handgun borrowed from a friend earlier that day, defendant approached Miguel Rojas-Lozano at a park. Witnesses recounted that Rojas-Lozano was sitting at a table playing cards and dice when defendant tapped him on the

shoulder, hit him in the face, and shot him multiple times. Rojas-Lozano was struck by nine bullets and died at the scene. A man standing nearby was shot in both feet.

Defendant was charged with first degree murder. The prosecution presented evidence he went to the park to shoot Rojas-Lozano for revenge. Defendant was angry because Rojas-Lozano had groped defendant's girlfriend at a bar the night before and when she protested, he broke a bottle over her head.

Defendant offered a self-defense theory. Testifying on his own behalf, he said he went to the park to ask Rojas-Lozano to reimburse money his girlfriend lost when she was unable to work after the assault. He brought the gun because he knew Rojas-Lozano to be a dangerous person who had served time in jail and carried a gun himself, sometimes brandishing it at people. When he confronted Rojas-Lozano, defendant saw him reach into his waistband. Thinking Rojas-Lozano was pulling a gun, he feared for his life and he fired to defend himself.

The jury acquitted defendant on the first degree murder charge but rejected his self-defense argument and convicted him of second degree murder (Pen. Code, § 187). It also convicted him of assault with a firearm (Pen. Code, § 245, subd. (b)) and found true the allegations that he discharged a firearm causing death (Pen. Code, § 12022.53, subd. (d)); personally used a handgun (Pen. Code, § 12022.5, subd. (a)); and inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)). The trial court sentenced defendant to forty years to life in prison, consecutive to three years.

## II. DISCUSSION

### A. Defendant Did Not Object to the Evidentiary Ruling He Now Challenges

The trial court ruled in limine that to bolster his self defense argument—specifically, to show his fear of Rojas-Lozano was reasonable—defendant could introduce evidence of prior dangerous conduct committed by Rojas-Lozano. But it excluded evidence that the murder victim, Rojas-Lozano, had been convicted of several criminal offenses. During the defense case, several police officers testified about

2

previous contacts. One officer testified he stopped Rojos-Lozano for swerving into a bike lane while driving; Rojas-Lozano then failed field sobriety tests, had a blood alcohol level above .08, and urinated on himself. Another officer testified he stopped Rojas-Lozano for driving erratically; Rojas-Lozano was unable to complete field sobriety tests and had a blood alcohol level above the legal limit. A third officer testified he found Rojas-Lozano in a park under the influence of a stimulant, with a loaded gun and cocaine his car; additional ammunition was found at Rojas-Lozano's house. Several years before that, Rojas-Lozano had been detained in a car in which a loaded gun was found, and he gave a false name to police. Another witness testified to Rojas-Lozano's reputation for carrying a gun and generally having a "short fuse."

In addition to the testimony about prior bad acts committed by Rojas-Lozano, the defense sought to introduce court records of convictions stemming from those incidents. The prosecution objected on the ground that, given the already admitted evidence about the underlying conduct, the convictions themselves would add little and were inadmissible under Evidence Code section 352 with their minimal probative value substantially outweighed by prejudicial effect or undue consumption of time. The defense countered that the convictions were relevant to prove identity. To avoid any ambiguity on that point, the prosecution offered to stipulate that the person involved in the incidents police officers testified about was Rojas-Lozano. The trial court commented, "Let me tell you my thinking. I look at [Evidence Code sections] 1103 and 1108, and the fact that I ruled that this conduct is admissible, based on Mr. Ceja-Rodriguez's testimony, the convictions would not add anything other than to solidify that this conduct resulted in him being convicted. Based on the evidence presented, it doesn't seem like this conduct is in dispute, other than demonstrating that Mr. Lozano was, at least, cooperating with law enforcement. [¶] In light of [the prosecutor's] willingness to stipulate, I'm leaning towards not allowing the prior convictions pursuant to 352."

3

After the trial court's explanation, defense counsel agreed to the proposed stipulation regarding identity. The court inquired whether the stipulation addressed "every single issue you're concerned with," and defense counsel answered, "Yes. My concern was that based on the testimony […] the jury could think maybe it's a different person." The prosecutor offered: "That's not an issue, Your Honor. I will agree it's the same person in all of those cases." Based on the representations by counsel, the court announced, "Okay. That will be the Court's ruling pursuant to 352, and I think it addresses all of the issues [that] concern [defense counsel] and the information he wants before the jury. And fortunately, here we have the testimony of the officers to testify about the conduct."

To challenge an evidentiary ruling on appeal, a defendant must object to the ruling in the trial court. (*People v. Partida* (2005) 37 Cal.4th 428, 435.) That requirement serves important purposes, beginning with preventing error by allowing full consideration of the evidentiary issue. *(Ibid.)* If we were to allow the appeal of an evidentiary ruling that was not objected to, a defendant could gamble at trial on an acquittal, knowing he could still challenge a resulting conviction on the very error he let pass. (*Id.* at p. 434.)

Defendant forfeited his appellate challenge to the exclusion of the victim's convictions because defense counsel not only failed to object to the trial court's ruling, but indeed acquiesced to it. After the trial court stated it was inclined to exclude the prior convictions, the prosecutor and defense counsel agreed on a stipulation that defense counsel said would resolve "every single issue" he was concerned with. Only then did the trial court exclude the convictions—a ruling both parties accepted. Having initially sought to admit the convictions to prove identity and bolster the evidence of the victim's dangerousness, the defense ultimately agreed to their exclusion upon the prosecution's stipulation to identity. Defendant cannot now challenge it on appeal.

Defendant alternatively contends his counsel was constitutionally ineffective for failing to object. But to succeed on a claim of ineffective assistance of counsel,

4

defendant must show his attorney's performance fell below what is reasonably expected under prevailing professional standards. (*People v. Riel* (2000) 22 Cal.4th 1153, 1175.) Strategic decisions during trial are afforded substantial deference and are not second-guessed on appeal. (*Id.* at p. 1185.) The decision here—agreeing to a stipulation on identity—was entirely reasonable. Given that the jury had heard about the victim's underlying conduct, evidence of the resulting convictions was of limited probative value to prove his dangerousness. The more important issue was identity, which the stipulation established. And the trial court had already indicated it was inclined to exclude the convictions, making the decision to agree to the stipulation all the more reasonable. Counsel's performance did not fall below prevailing professional norms.

Even if we were to reach the evidentiary issue on its merits, we would find no error. Decisions to exclude evidence are reviewed for abuse of discretion. (*People v. Clark* (2016) 63 Cal.4th 522, 597.) We defer to the trial court's judgment about what evidence is admitted at trial and reverse such a decision only when it is arbitrary or unreasonable, or outside what the applicable legal standard allows. (*Id.* at p. 572.) The applicable standard is Evidence Code section 352, which allows a court to exclude relevant evidence when its probative value is substantially outweighed by the potential for prejudice or undue consumption of time. Under that standard, it was within the trial court's discretion to exclude evidence of the victim's prior convictions (which had little probative value, as we have explained).

Defendant also asserts that excluding the prior conviction evidence violated his constitutional right to due process. As we have found no error in excluding the evidence, we likewise find no constitutional violation. (See *People v. Partida*, *supra*, 37 Cal.4th 428, 437.) Defendant's self-defense theory was based on the victim's reputation for dangerousness. The trial court allowed defendant to present ample evidence in support of that theory. He received a fair trial.

**B. Defendant Did Not Request the Jury Instruction He Raises on Appeal**

Defendant argues the trial court should have instructed the jury with certain additional language in CALCRIM No. 505 ("Justifiable Homicide: Self-Defense or Defense of Another") which provides that one is not guilty of homicide if the killing was in lawful self-defense. Defendant contends the trial court should have included the optional language in the pattern instruction that reads: "[If you find that <insert name of decedent/victim> threatened or harmed the defendant [or others] in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable.]" (CALCRIM No. 505.)

A defendant is entitled to a jury instruction on all valid defense theories supported by the evidence. Whether the trial court has a sua sponte duty to give an instruction depends on whether it relates to a general principle of law, or is a so-called pinpoint instruction highlighting a specific defense theory. (See *People v. Nelson* (2016) 1 Cal.5th 513, 542.) Justifiable homicide committed in self defense is a general principle of law the trial court has a sua sponte duty to instruct on when the evidence supports the theory and it appears the defendant is relying on it. (*People v. Breverman* (1998) 19 Cal.4th 142, 157.) But the related point of law that threats to others can be considered in assessing the reasonableness of a self defense claim is a pinpoint instruction that need be given only if requested. (*People v. Grassini* (2003) 113 Cal.App.4th 765, 777.)

We find no error in failing to give the pinpoint instruction regarding threats to others because defendant did not request it. Defendant notes he did request an instruction on the principle that threats the victim made toward *him* could be considered (an instruction the trial court refused), and he argues that request was broad enough to encompass the instruction regarding threats to others. But those are two distinct instructions, and each would be supported by different evidence. The trial court refused to give the requested instruction about threats toward defendant because there was no evidence to support it. A request for the instruction on threats to others would have

6

prompted a different inquiry to decide if there was evidence to support that instruction. The trial court never determined whether the threats to others instruction was appropriate because it was never asked to do so. For the same reason, we reject defendant's argument that the trial court's refusal to instruct on threats the victim made toward him rendered futile any request for the instruction on threats made toward others.

Defendant alternatively contends he received ineffective assistance of counsel because his attorney did not request the threats to others instruction. But here again, we will not second-guess strategic choices. Whether to request a particular instruction is a tactical decision, and in "the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions." (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.) We can readily identify a reason defendant's attorney would not request the threats to others instruction: the evidence supporting that instruction was the attack on defendant's girlfriend at the bar, which was the basis for the prosecution's revenge theory to prove first degree murder. Opting not to pursue a threats to others line of argument would avoid emphasizing the evidence that was at the core of the prosecution's premeditation case. We note also that far from being ineffective, counsel achieved success on that question: defendant was acquitted of first degree murder and convicted of a lesser offense.

## C. No Error in Not Striking the Firearm Enhancement

Defendant challenges the trial court's refusal to strike a Penal Code section 12022.53, subdivision (d) sentencing enhancement for discharging a firearm causing death. A trial court has discretion to strike that enhancement at the time of sentencing in the interest of justice. (Pen. Code, § 12022.53, subdivision (h).) Relevant considerations are the general sentencing objectives set out in the California Rules of Court, as well as circumstances in aggravation or mitigation. (See *People v. Pearson*

7

(2019) 38 Cal.App.5th 112, 117 [citing California Rules of Court, rules 4.410; 4.421; and 4.423].)

A trial court's discretion in making sentencing choices is very broad. (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1031.) Under the deferential abuse of discretion standard of review, we do not substitute our judgment for that of the trial court—it makes no difference whether we would have made a different choice or whether the choice defendant argues for also would have been reasonable. Our task is limited to ensuring the trial court's decision conforms with the law and was not arbitrary or irrational.

Applying that standard, the trial court did not abuse its discretion in imposing the sentencing enhancement. The record shows the decision was the product of careful consideration of the relevant factors and was not arbitrary or irrational. At the sentencing hearing, the court explained its reasoning: "As to the 12022.53(d) enhancement, based on all of the evidence presented at trial and the additional information provided by counsel, the Court is not inclined to exercise its discretion and strike Penal Code Section 12022.53(d) allegation or punishment. [] [¶] I will note my reasons for the record for not exercising the Court's discretion. The defendant obtained a firearm and took it with him to a park where the victim was playing cards. At the time, there were other people in the immediate area and apparently over a hundred people in the park area. As the defendant approached the victim and confronted him without warning, the defendant immediately shot the victim multiple times. There was evidence presented the defendant continued shooting the victim after he fell to the ground. The defendant then immediately fled the area and left the state. He was arrested a little over a month later in Provo, Utah, as well as all of the other facts and circumstances presented at the trial. [¶] If Mr. Ceja-Rodriguez has remorse for his conduct, he has not expressed it. [¶] Finally, the victim was particularly vulnerable. [¶] Those are the reasons the Court has decided not to exercise its discretion as to the Penal Code Section 12022.53(d) enhancement."

8

The trial court's comments reflect an informed and considered exercise of discretion, not an abuse of it.

Here again, defendant asserts ineffective assistance of counsel, faulting trial counsel for not objecting to the court's finding that the victim was particularly vulnerable, an aggravating circumstance. Defendant argues counsel should have objected because there was no evidence to support that finding, but as the prosecutor argued, the victim was in a vulnerable position—playing cards at a table with his back turned—when defendant took him by surprise. Even if we were to agree that the evidence is insufficient to support the finding, we would still reject defendant's ineffective assistance of counsel claim because victim vulnerability was but one factor among many the court considered in imposing sentence. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 839 [broad discretion in sentencing means one aggravating circumstance might be less significant than the court's overall assessment of the defendant's conduct].) We are not convinced that removing that aggravating factor from the court's calculus would have led to a different decision. Defendant has therefore not shown a probability of a more favorable result, as required to succeed on a claim of ineffective assistance of counsel. (See *People v. Ledesma* (1987) 43 Cal.3d 171, 217.)

### D. The Abstract of Judgment Must Be Corrected to Strike Punishment for the Great Bodily Injury Enhancement Imposed on Count 2

Defendant correctly notes that the abstract of judgment contains a clerical error. It does not reflect that the trial court imposed a great bodily injury sentencing enhancement under Penal Code section 12022.7, subdivision (a) as to count 2 (assault with a firearm) but then struck the punishment for that enhancement. We will order the abstract of judgment amended to correctly reflect the sentence imposed.

### III. DISPOSITION

The clerk of the superior court is ordered to amend the abstract of judgment to reflect the imposition of an enhancement under Penal Code section 12022.7,

9

subdivision (a) as to count 2, and also to reflect that the sentence for that enhancement was stricken.

With that correction, the judgment is affirmed.

_____

Grover, J.

WE CONCUR:

_____

Greenwood, P. J.

_____

Lie, J.

H048117 - *The People v. Ceja Rodriguez*